**Eugene T. KING, Jr., Petitioner,**

v.

**Dennis W. HASTY, Warden, Metropolitan Detention Center, Respondent.**

**No. 00 CV 5630.**

United States District Court, E.D. New York.

May 21, 2001.

to reveal that cancellation of defendant Weber's deposition was due to a cardiac condition.

Eugen T. King, Jr., Brooklyn, NY, pro se.

Cecil C. Scott, U.S. Atty., Brooklyn, NY, for Respondent.

## MEMORANDUM AND ORDER

AMON, District Judge.

*Pro se* petitioner Eugene T. King, Jr. moves for habeas corpus relief pursuant to 28 U.S.C. § 2241. Specifically, petitioner argues that he was denied due process in connection with the revocation of his parole and seeks to be released from federal custody. For the reasons discussed herein, the petition is denied.

### Background

Petitioner King was paroled *nunc pro tunc* on July 14, 1996, from a 25–year sentence he was serving for bank robbery.[1] Nearly four years later, on June 7, 2000, the United States Parole Commission (the "Parole Commission") charged King with having violated the conditions of his parole by using cocaine. King was arrested on June 14, 2000 pursuant to a violator's warrant.

On June 26, 2000, the Parole Commission's Interviewing Officer conducted a preliminary interview with King at the Metropolitan Detention Center in Brooklyn. King admitted that he had used cocaine while on parole, and that he submitted urine specimens that tested positive for cocaine on at least eight occasions in 1999 and 2000. (Respondent's Mem. in Opp'n, Ex. 3.) Based on King's admissions and the laboratory reports verifying the positive urine tests, the Interviewing Officer found there was probable cause for finding that King had violated his parole. (*See id.*)

The Parole Commission notified King on or about July 25, 2000, that he was eligible to apply for an expedited revocation determination. Under the procedure, King had the opportunity to waive his right to a revocation hearing, and accept the Parole Commission's recommended sentence of 12 months' imprisonment, the minimum sentence under the Parole Commission's guidelines for his violation.[2] The notice stated that:

> You are under no obligation to apply for the expedited revocation procedure set forth above. If you do not wish to waive your right to a revocation hearing and accept the proposed decision set forth, do not complete this form. You will be given a revocation hearing under normal procedures. After your revocation hearing, the Commission, on the basis of the information available, may take any action authorized by its regulations. Thus, the action taken by the Commission may be the same, more favorable, or less favorable than the proposed action set forth above. The fact that you chose to have a revocation hearing rather than accept the proposed decision set for forth above will not be taken into account.

(Respondent's Mem. in Opp'n, Ex. 4 at 3.) King chose not to apply for an expedited revocation proceeding.

On September 19, 2000, King filed the instant habeas petition, alleging that he was being denied due process because he had not been given a revocation hearing within 90 days after his arrest, as required by the 28 C.F.R. § 2.49(e).[3] On Septem-

---

1. King was not actually released from federal custody until October 16, 1996. This delay in releasing him is the subject of King's *Bivens* action against John R. Simpson, Regional Commissioner of the United States Parole Commission, *King v. Simpson*, 97 CV 0036.

2. The notice given to King indicated that the guideline range for his violation was 12–16 months.

3. Section 2.49(e) also provides that a local revocation hearing must be held within 60 days of the probable cause determination. King does not, however, appear to have re-

ber 28, 2000, the Court issued an order to show cause directing the respondent to respond to the petition by November 6, 2000. In a telephone conference with the Court on October 11, 2000, King indicated that a parole revocation hearing had been scheduled for him on October 12, 2000, and agreed that proceedings in this case should be stayed until after the hearing.

At the revocation hearing, King admitted that he had violated his parole, but asked for a lenient sentence based on his personal circumstances. (Respondent's Mem in Opp'n, Ex. 5, at 1–2.) Based on the hearing, the Parole Commissioner's Examiner recommended a sentence of 8 months, a departure from the applicable Parole Commission guidelines range of 12–16 months, and placement in a Community Correction Center for 60 days prior to release. (*See id.* at 3.) The Examiner concluded a departure was warranted because, *inter alia*, King had not been involved in any criminal activity for more than 13 years, had been on parole successfully for 4 years before the drug violation at issue, and had participated in drug therapy while on parole.

In a subsequent telephone conference on November 14, 2000, King informed the Court that he intended to withdraw the instant petition if the Parole Commission adopted the Examiner's recommendation made at his hearing. Unbeknownst to both King and the Court, on October 20, 2000, a Parole Commission Reviewer had considered and rejected the Examiner's recommendation of an 8–month sentence, because the Reviewer disagreed that the factors cited by the Examiner warranted a departure from the guidelines. The Reviewer noted that King had not been in-

volved with criminal activity for 13 years in part because he had been in prison from 1987 to 1996, and that he had admitting using cocaine as early as 1998, two years after his release on parole, and had been using cocaine consistently since then, despite his participation in drug treatment programs. (Respondent's Mem. in Opp'n, Ex. 5, at 4.) The Reviewer instead recommended a sentence at the bottom of the guidelines, 12 months.

The Parole Commission subsequently issued a Notice of Action ("NOA") dated October 25, 2000, sentencing petitioner to 12 months. The NOA informed King that the decision was appealable to the National Appeals Board pursuant to 28 C.F.R. § 2.26. King does not appear to have received the NOA until November 15, 2000, after the telephone conference with the Court.

On November 28, 2000, King filed a motion requesting an evidentiary hearing, or in the alternative, for summary judgment, and indicating that he no longer intended to withdraw his petition. King filed a supplemental motion requesting that he be granted habeas corpus relief on January 26, 2001. Respondent submitted his opposition to the petition on February 5, 2001.

*Discussion*

In his revised papers, petitioner now essentially contends that he has been denied due process in connection with his parole revocation because he was not given a timely revocation hearing pursuant to 28 C.F.R. § 2.49, and because the Parole Commission had pre-determined the sentence he would receive prior to the revocation hearing.[4] Respondent contends the

quested such a hearing pursuant to 28 C.F.R. § 2.49(a).

**4.** King also argues that the Parole Commission or the government acted in bad faith by

attempting to withhold the NOA from him and the Court. It is unfortunate that King did not receive the NOA until three weeks after it was issued, but there is no evidence in the

petition should be dismissed because petitioner failed to exhaust his available administrative remedies, and because his claims have no merit.

## I. Failure to Exhaust Administrative Remedies

A petitioner must exhaust all available administrative remedies before filing a petition for habeas corpus relief, including in the parole context. *See Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001); *Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979) (per curiam); *Stinchfield v. Menifee,* 119 F.Supp.2d 381, 385 (S.D.N.Y.2000). In this case, King was notified expressly that he could appeal the NOA to the National Appeals Board pursuant to 28 C.F.R. § 2.26, and he did not appeal.

Although a petitioner might be able to avoid the need to exhaust his administrative remedies if the available procedures are "incompetent to provide adequate redress," *Hall,* 1998 WL 397850, at *3 (quoting *Gonzalez v. Perrill,* 919 F.2d 1, 2 (2d Cir.1990)), petitioner here fails to make any showing that an appeal to the National Appeals Board was "unavailable or inadequate." *Id.; see also Russo v. Reish,* No. 97 Civ. 3607, 1997 WL 401821, at *2 (S.D.N.Y. July 17, 1997).

Moreover, since King failed to file an appeal within the applicable 30–day period, he is now procedurally barred from raising his challenges to the NOA in this petition. *See Maldonado v. Hasty,* No. 98 Civ. 2462, 1999 WL 216649, at *2 (S.D.N.Y. Apr. 14, 1999); *Hall v. United States Parole Comm'n,* No. 97 Civ. 7814, 1998 WL 397850, at *2 (S.D.N.Y. July 15, 1998);

*Johnson v. Morton,* 97 CV 957, 1997 WL 470878, at *1 (E.D.N.Y. June 26, 1997). Accordingly, as petitioner fails to make the requisite showing of "cause and prejudice" to be excused from his failure to timely appeal the Parole Commission's determination, *Carmona,* 243 F.3d at 634, his petition must be denied.

## II. Revocation Hearing

Petitioner's claims that he was denied due process in connection with his revocation hearing are in any event meritless. The Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) outlined what due process required in the parole revocation setting. As a general matter, the Court held that a parolee must have the opportunity to be heard at a revocation hearing "within a reasonable time after the parolee is taken into custody," and "prior to the final decision on revocation." *Id.* at 487–88, 92 S.Ct. 2593. Such hearing

> must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that the circumstances in mitigation suggest that the violation does not warrant revocation.

*Id.* at 438, 92 S.Ct. 2593. Petitioner was not denied due process in this case.

### A. Delay

There is no dispute here that the Parole Commission did not conduct a timely parole revocation hearing as mandated

---

record to support any allegation that either the Parole Commission or the government intentionally failed to send King a copy of the NOA or to inform King and the Court of such

NOA. In any event, King was not prejudiced by the late receipt of the NOA because he never consented to withdrawing his habeas petition.

by its own regulation, 28 C.F.R. § 2.49(e). Section 2.49(e) provides that a revocation hearing must be held within 90 days after the parolee's arrest. King was arrested on June 14, 2000, and did receive a revocation hearing until October 12, 2000, approximately 120 days after his arrest.

■ The mere fact of a delay, however, is not by itself sufficient to establish a due process violation.[5] Rather, the petitioner must also show that the delay was "unreasonable and prejudicial." *Heath v. United States Parole Comm'n,* 788 F.2d 85, 89–90 (2d Cir.1986); *see United States ex rel. Blassingame v. Gengler,* 502 F.2d 1388, 1388 (2d Cir.1974); *Reilly v. Morton,* 97 CV 5571, 1999 WL 737916, at *4 (E.D.N.Y. Sept.16, 1999); *United States ex rel. Carrasquillo v. Thomas,* 527 F.Supp. 1105 (S.D.N.Y.1981) (citing cases), *aff'd,* 677 F.2d 225 (2d Cir.1982).

In this case, petitioner has not shown that the 30–day delay in holding that the revocation hearing was unreasonable or prejudiced him in any way. To the contrary, King concedes that his revocation hearing was "frank, candid, and open," and that he was able to fully and fairly present his case to the Examiner. (Pet'r Mot. for Evidentiary Hr'g ¶ 7.) Accordingly, King is not entitled to habeas relief on this claim.

### B. *Pre–Determination of Sentence*

■ Petitioner's argument that he was denied due process because the Parole Commission had already determined his sentence prior to the revocation hearing, in part as retribution for his previously filing a *Bivens* action against John R. Simpson, Regional Commissioner of the United States Parole Commission, *King v. Simpson,* 97 CV 0036, is also without merit. If petitioner's allegations were substantiated, the Parole Commission would arguably have violated *Morrissey*'s guidance that a parolee is entitled to a fair revocation hearing "prior to the final decision on revocation." 408 U.S. at 487, 92 S.Ct. 2593. Petitioner's contentions are conclusory at best, however, and are not supported by the evidence in the record.

Petitioner appears to base his claim on the fact that the Parole Commission offered him a 12–month sentence for violating his parole on July 25, 2000, prior to his revocation hearing, and that he ultimately received the identical 12–month sentence after the hearing. That evidence alone is simply insufficient to show any bad faith or impropriety on the part of the Parole Commission.

Pursuant to its regulations, the Parole Commission is authorized to offer to certain parolees "an opportunity to accept responsibility for his violation behavior, to waive a revocation hearing, and to accept the sanction proposed by the Commission." 28 C.F.R. § 2.66. In this case, the Parole Commission did exactly that—it offered King the chance to waive his revocation hearing and accept a sentence of 12 months, which was at the bottom of the 12–16 month guidelines range applicable to his violation. King had the option of accepting or rejecting this offer, and he chose to reject it. There was certainly nothing improper about the Parole Commission's offer of an expedited revocation determination to King.[6]

---

5. The appropriate remedy for an untimely review, absent prejudice, is a writ of mandamus to compel a hearing, which King did not pursue. *Heath v. United States Parole Comm'n,* 788 F.2d 85, 89 (2d Cir.1986).

6. King further alleges that Alfred Watson, the probation officer who reviewed the expedited revocation procedure with King told him that he would have to serve 12–16 months whether he "agreed to the waiver or not." (Pet'r Mot. for Evidentiary Hr'g ¶ 3.) Even accepting

The mere fact that the Parole Commission ultimately sentenced petitioner to the identical sentence that was initially offered to him does not mean that his sentence had been pre-determined. The notice of his right to apply for expedited proceedings specifically cautioned King that "the action taken by the Commission [after a revocation hearing] may be the same, more favorable, or less favorable than the proposed action ..." (Respondent's Mem. in Opp'n, Ex. 4 at 3.) Since the sentences for parole violations are generally prescribed by the Parole Commission's guidelines, it is not surprising that many times a parolee will ultimately receive the same sentence that was proposed prior to the revocation hearing. This is especially true in King's case, because he received the lowest sentence possible under the guidelines applicable to his violation, 12 months. Absent any other evidence, there is thus no reason for the Court to believe that King's revocation hearing was not conducted in good faith.

Moreover, the record in this case tends to indicate that far from being pre-determined, the 12–month sentence ultimately imposed was the product of careful consideration. The Parole Commissioner's Examiner, after the revocation hearing, recommended a sentence of 8 months, a departure from the 12–16 month guidelines range, because of his assessment of King's personal circumstances. The Examiner cited the fact that King had not been involved in any criminal activity for more than 13 years, had been on parole successfully for 4 years before the drug violation at issue, and had participated in drug therapy while on parole.

In declining to adopt the Examiner's recommendation, the Parole Commissioner's Reviewer set forth numerous reasons why he disagreed that the factors listed by the Examiner warranted a departure from the guidelines. In particular, the Reviewer emphasized that King had admitted using cocaine as early as 1998, two years after his release on parole, and had been using cocaine consistently since then, despite his participation in drug treatment programs. The Reviewer nevertheless recommended a sentence at the bottom of the guidelines, 12 months, because it was King's first parole revocation.

In light of these well-reasoned explanations for the various recommendations made regarding King's sentence after the revocation hearing, the Court cannot find that the Parole Commission acted in bad faith prior to, during, or after the hearing, or that it had pre-determined King's sentence. There is therefore no basis for the Court to grant King habeas relief on this claim.

### Conclusion

For the foregoing reasons, the petition is denied. The Clerk of the Court is directed to close the case.

SO ORDERED.

---

the statement as true, the officer's comment does not appear to have been made in bad faith, as the appropriate guideline for King's violation was 12–16 months. Moreover, as the officer was not involved with the later revocation proceedings, his remark does not tend to show that King's sentence had already been determined before the revocation hearing.