Weldon CHASE, Petitioner,

v.

**J.M. KILLIAN, Warden, Respondent.**

**No. 08 Civ. 1152(VM).**

United States District Court,
S.D. New York.

Nov. 17, 2008.

---

Weldon Chase, Butner, NC, Pro Se.

### *DECISION AND ORDER*

VICTOR MARRERO, District Judge.

*Pro se* petitioner Weldon Chase ("Chase"), who is currently incarcerated at FCI Butner in North Carolina, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("§ 2241"). He alleges that the revocation of his parole by the United States Parole Commission (the "Commission") violated his right to due process under the Fifth Amendment to the United States Constitution. For

the reasons discussed below, Chase's petition is DENIED.

# I. *BACKGROUND* [1]

## A. *UNDERLYING CRIME*

On April 2, 1982, in the District of Maryland, Chase was convicted of (1) bank robbery; (2) bank larceny; and (3) assault during robbery, in violation of 18 U.S.C. § 2113. He was sentenced to a term of imprisonment of twenty years. Shortly thereafter, Chase was convicted of crimes in connection with another bank robbery, and on April 16, 1982, he was sentenced to a separate twenty-year term to be served concurrently with the first.

Because Chase was sentenced for the underlying crimes prior to November 1, 1987, when the United States Sentencing Guidelines were implemented, Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728, he was eligible for parole under the since-repealed federal parole system. 18 U.S.C. §§ 4201–4218, *repealed,* Pub.L. No. 98–473, Title II, § 218(a)(5), 98 Stat. 1837, 2027 (1984). The federal parole statutes and regulations continue to apply to Chase. *See* Pub.L. No. 110–312, § 2, 122 Stat. 3013 (2008).

## B. *CHASE'S PAROLE VIOLATION*

Chase was released to parole supervision on March 3, 1989. On August 15, 1989, Chase was arrested while committing an armed home invasion. He pled guilty in Maryland state court to (1) robbery with a deadly weapon; (2) a handgun violation; and (3) possession of cocaine. On December 11, 1989, Chase was sentenced for this conviction to a term of imprisonment of twenty-five years. On January 16, 1990, the Commission issued a warrant for Chase's arrest for violating the terms of his supervised release, which was lodged as a detainer during the time he served his state sentence. *See* 28 C.F.R. § 2.47(a) ("When a parolee is serving a new sentence in a federal, state or local institution, a parole violation warrant may be placed against him as a detainer.").

## C. *PAROLE REVOCATION PROCEEDINGS*

On September 21, 2006, Chase was released from Maryland state prison into federal custody, based on the parole violation detainer issued in 1990.[2] Chase was then informed, on October 17, 2006, that (1) the Commission determined there was probable cause to believe that he had violated the terms of his release when he was convicted for the 1989 crimes; and (2) the Commission would hold a hearing to decide whether his parole should be revoked. *See id.* § 2.47(c)(3) ("If the warrant is not withdrawn and no revocation hearing is conducted while the prisoner is in state or local custody, an institutional revocation hearing shall be conducted after the prisoner's return to federal custody.").

On November 28, 2006, Chase received an Expedited Revocation Proposal (the "Proposal") from the Commission. The Proposal, which required a response from Chase within fourteen days, offered to credit Chase's state sentence toward the remainder of his federal sentence, allowing him to be reparoled on February 19, 2007.

---

**1.** This factual summary is derived from the parties' representations contained in the following submissions and any exhibits attached thereto: Amended Petition for Writ of Habeas Corpus by Person in Federal Custody, dated February 20, 2008 ("Amend. Pet."); and Respondent's Response to the Amended Petition for Habeas Corpus, dated October 6, 2008

("Resp't's Mem."). Except where necessary, no further citation to these documents will be made.

**2.** The Maryland state prison released Chase prior to the full execution of his state sentence, but the circumstances of the release are not clear from the record.

Chase responded to the Proposal on December 1, 2006. On the Proposal, Chase signed his initials next to the statement, "I decline the U.S. Parole Commission revocation proposal. I wish to have an in-person revocation hearing," and signed and dated the bottom of the document.[3] (Resp't's Mem. at Ex. P.)

Chase's requested revocation hearing was held on December 13, 2006. The Hearing Examiner (the "Examiner") recommended that Chase be eligible for parole on February 19, 2007, the same date offered by the Proposal. The Commission informed Chase that a final decision was pending. See 28 C.F.R. § 2.23(d) ("A recommendation of a hearing examiner panel shall become an effective Commission decision only upon the Regional Commissioner's approval, and docketing at the regional office.").

On February 22, 2007, the Commission issued a Notice of Action (the "Notice") rejecting the Examiner's recommendation and ordering that Chase's parole be revoked. The Commission stated that the decision to revoke Chase's parole was based on, among other things, that Chase had an anger problem, that he "went from bank robberies to home invasions, robbery and burglary, where [he] robbed the residents at gunpoint in their own home," and that his history of violent crime made him dangerous to the public. (Resp't's Mem. at Ex. R.)

Chase appealed the decision on April 11, 2007, stating that the decision, "was not supported by the reasons or facts stated in the Notice of Action." (Resp't's Mem. at Ex. S.) Chase disputed the allegation that he had anger management problems, noting that seventeen years had passed since the violation. The appeal asserted that Chase made use of the rehabilitative pro-

grams available to him at prison and that he "recognizes and regrets the severity of his previous behavior." (Id.) Furthermore, the appeal stated that Chase is dealing with serious health problems; he has Hepatitis C and was recently diagnosed as HIV-positive. (Id.)

The Commission supplemented the original Notice on June 15, 2008, stating additional support for Chase's parole revocation. The Commission cited Chase's "criminal record dating back to age 12," that he had "committed over a half dozen violent crimes," and that he was "on parole for committing 2 armed bank robberies and within 6 months of being released ... committed this current offense for which the state sentenced [him] to 25 years." (Resp't's Mem. at Ex. T.) Again, the Commission concluded that Chase was a "danger to the community." (Id.)

The National Appeals Board (the "Board") affirmed the Commission's decision, finding that "the reasons for the Commission's decision are clearly supported by the reasons provided on the notice of action." (Resp't's Mem. at Ex. W.) Chase filed the instant action in federal court on February 5, 2008.

## II. DISCUSSION

### A. STANDARD OF REVIEW

As an initial matter, the Court is mindful that Chase is proceeding pro se, and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (quoting Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Moreover, when a plaintiff brings a case pro se, the Court must construe his plead-

---

**3.** Chase claims he rejected the Proposal because a public defender advised that he had completed his entire sentence.

ings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Still, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

 The Court may review decisions of the Commission only for abuse of discretion. *See Lieberman v. Gunnell,* 726 F.2d 75, 77 (2d Cir.1984); *Bialkin v. Baer,* 719 F.2d 590, 593 (2d Cir.1983). Unless there is no rational basis for the Commission's actions, the Court must abide by the Commission's decision to revoke parole. *See Bialkin,* 719 F.2d at 593; *Stinchfield v. Menifee,* 119 F.Supp.2d 381, 385 (S.D.N.Y.2000).

B. *ELIGIBILITY TO SEEK § 2241 RELIEF*

 Chase asks for relief under § 2241, which is "available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001). In order to receive judicial review pursuant to § 2241, Chase must have exhausted his administrative remedies. *See id.* at 634 (*citing Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979)). Because Chase received a final decision from the Board, he has satisfied the exhaustion requirement. *See* 28 C.F.R. § 2.26(c) ("Decisions of the National Appeals Board shall be final.").

C. *FIFTH AMENDMENT DUE PROCESS CLAIM*

 Chase claims that his Fifth Amendment due process rights were violated be-

cause he was unaware that if he rejected the Proposal, he risked the chance that the Commission might revoke his parole. Furthermore, Chase argues that the Commission acted "vindictively" by revoking his parole when he did not accept the Proposal.

The Court finds that the Commission did not violate Chase's due process rights. In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court established that in the context of reparole hearings, due process requires:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 488–89, 92 S.Ct. 2593; *see also* 18 U.S.C. § 4214 (prescribing process for parole revocation).

The process made available to Chase complied with the Supreme Court's *Morrissey* requirements. On January 16, 1990, the Commission provided Chase with notice of the claimed parole violation. This notice apprised Chase that his 1989 conviction formed the basis of the evidence against him. In a letter dated October 17, 2006, the Commission again provided Chase with notice that it had probable cause to believe he had violated the terms of his release, that the probable cause was based upon his stare robbery conviction,

that Chase would have an opportunity for a hearing, and that the evidence reviewed at the hearing would be the same evidence provided "on the warrant application and in the Summary Report of the Preliminary Interview." (Resp't's Mem. at Ex. N.)

Chase then received the Proposal, which clearly stated that if Chase sought a hearing instead of accepting the Commission's offer, "the action taken by the Commission may be the same, more favorable, or less favorable than the proposed action." (Resp't's Mem. at Ex. O.) Chase was therefore on notice that his parole could be revoked if he rejected the Proposal.

On December 13, 2006, Chase received a hearing before the Examiner, a "neutral and detached" decisionmaker. At the hearing, Chase had the opportunity to confront the evidence against him. Though Chase did not produce any evidence or witnesses to testify on his behalf, he did have a lawyer present. Finally, the Commission provided Chase with a written statement of its decision and the reasons supporting the decision, dated February 22, 2007. The Commission supplemented its reasoning in a subsequent letter to Chase, dated June 15, 2007, and the Commission's decision was affirmed by the Board.

Moreover, Chase's hearing was timely, as required by *Morrissey,* 408 U.S. at 488, 92 S.Ct. 2593 ("The revocation hearing must be held within a reasonable time after the parolee is taken into custody."). Federal parole regulations require that the Commission provide a parole hearing within ninety days of executing the warrant against the offender. 28 C.F.R. § 2.49(f). The United States Marshal's office executed the warrant against Chase on September 21, 2006 and the Commission afforded Chase a hearing less than ninety days later, on December 13, 2006.[4] Based on the above, the Court concludes that Chase was afforded due process in the parole revocation hearing.

■ Finally, the Commission's decision to revoke parole was within its discretion and therefore not a "vindictive" act. *See Iuteri v. Nardoza,* 732 F.2d 32, 37 (2d Cir.1984) ("Congress has vested the sole power to grant or deny parole in the sound discretion of the Commission." (*citing Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir.1976))). At the time of his hearing in December 2006, Chase had served 208 months of his federal sentence—well above the sixty- to ninety-month guideline range.[5] When the Commission revoked parole and instructed that

4. The Court notes that the Commission's revocation decision, dated February 22, 2007, was not provided to Chase within the twenty-one-day time frame established by statute. *See* 18 U.S.C. § 4214(e). This delay, however, does not justify habeas relief. When the Commission does not abide by the specified timelines, "absent prejudice or bad faith on the Commission's part, the appropriate remedy is not a writ of habeas corpus, but a writ of mandamus to compel compliance with the statute." *Heath v. United States Parole Comm'n,* 788 F.2d 85, 89 (2d Cir.1986). Chase does not show, nor does the record indicate, that the Commission acted with bad faith or prejudice in failing to comply with the statute in this regard.

5. The Commission guidelines consider three different categories in setting dates for parole or reparole: severity of the underlying crime, salient factor score, and conduct while in prison. *See* 28 C.F.R. §§ 2.20, 2.21. For severity of the underlying crime, Chase received a score of five on a scale from one to eight, with eight being the most severe. *Id.* § 2.20. Chase received a salient factor score of two on a scale from zero to ten, with ten indicating that the offender has the smallest chance of the offender committing another violation while on supervised release. *Id.* § 2.20. The Commission added eighteen months to the sixty- to seventy-two-month range based on Chase's prison behavior, resulting in a total guidelines range of sixty to ninety months.

Chase would continue to serve his sentence until its expiration, the Commission further exceeded the guidelines range. The Commission, however, may depart from the guidelines "[w]here the circumstances warrant." 28 C.F.R. § 2.20(c); *see also Iuteri*, 732 F.2d at 37 ("Although the Commission generally relies on the guidelines in determining the release date of a prisoner, it is not limited exclusively by them." (citation omitted)). The Commission may find that "especially mitigating or aggravating circumstances in a particular case may justify a decision ... different from" the guidelines. 28 C.F.R. § 2.21(d).

In accordance with the regulations, the Commission specifically found that for Chase, "a decision above the guidelines is warranted because [he is] a more serious ... risk than indicated by the guidelines." (Resp't's Mem. at Ex. T.) As previously discussed, the Court may not substitute its judgment for the Commission's, and must affirm the Commission's decision to exceed the guidelines unless the decision is irrational. *See Bialkin*, 719 F.2d at 593. Considering the nature of Chase's original offense, the short period of time between his release and subsequent parole violation, Chase's extensive criminal record, as well as the seriousness of the offense involved in the violation, the Court is persuaded that the Commission had a rational basis for revoking Chase's parole.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the amended petition (Docket No. 3) of petitioner Weldon Chase for a writ of habeas corpus is DENIED. The Clerk of the Court is directed to withdraw any pending motions and to close this case.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**